¶ 1 I must dissent in part from the result reached by the majority for the following reasons.
 {¶ 2} At the outset, while conceding the injunction was an agreed entry, I find it sadly one sided. Its primary reason appears to be to restrict the appellants, while doing little to restrict the appellees. While it references the appellees' security force, at only one place does it refer generally to appellees' agents. The overwhelming majority of the restrictions are placed upon the appellant. I concede Ohio law permits courts to enter injunctions under these circumstances. Nevertheless, I believe care must be taken not to favor one side or the other, and to require all persons present to behave in an appropriate manner.
 {¶ 3} Likewise, I agree with the majority the language the appellants used was nasty, juvenile, and repulsive. However, I would remind all persons that as adults, we know such language says far more about the person who uses it, than the person to whom the language is addressed. People today are exposed to all sorts of language and gestures, on public highways, on the streets, and even on the television programs we allow into our homes. I believe foul language is far more common today than it was even a few years ago. This does not make it appropriate, or acceptable, but it certainly makes it less shocking, and even, regrettably, expected. We must also consider the context. In a school, church, or court room the language referenced herein would be stunning; on a three year old picket line where replacement workers and strikers come into regular contact, it is unfortunately nearly inevitable, and all parties must know this and be prepared for it.
 {¶ 4} With the above in mind, and because the assignment of error are overlapped somewhat, I will address the activities of each of the five appellants.
 GABRIEL {¶ 5} The majority simply brushes aside the assignments of error with regard to appellant Gabriel. Gabriel was accused of shouting at the drivers of the vehicles as they left the Mansfield facility. The language Gabriel used was vulgar in the extreme. Gabriel was also alleged to have repeatedly blocked the vehicles as they attempted to leave, or to have obscured the drivers' view of traffic as they attempted to pull out of the facility. Alysia Brink testified Mr. Gabriel was standing in her window, blocking her view, and she had to inch her car out before she could pull on the road.
 {¶ 6} The evidence indicates it took seconds, not minutes, for the vehicles to by-pass Mr. Gabriel and pull out of the lot.
 {¶ 7} The restraining order requires the appellants to not obstruct the roadway or line of sight with large signs, shacks, trailers, or any other object which would obstruct the traffic flow or line of vision. The injunction requires the appellants not block or obstruct free ingress or egress at any of the driveways. The injunction prohibits the appellants from standing, walking, or running within seven hundred fifty feet of the facility with baseball bats, clubs, sticks, slingshots, or wrist rockets, guns, knives, ice picks, quantities of rock, or picket signs held by or attached to any wooden or metal objects.
 {¶ 8} There was no evidence Mr. Gabriel had any of the above items on his person. He did not use a motor vehicle, a large sign, a shack, or a trailer to obstruct the flow of traffic or block the driver's vision. If he was attempting to impede traffic, he was certainly ineffective, because the drivers were inconvenienced for a half a minute or so.
 {¶ 9} I find appellant Gabriel's actions did not violate the injunction.
 GREGORY {¶ 10} Appellant Gregory threatened to get a gun, and warned he was unstable and would just as soon shoot security guards as look at them.
 {¶ 11} I agree with the majority this violates the order not to threaten appellees.
 DURIG AND RISINGER {¶ 12} Both appellants admittedly taunted one of appellees' supervisors about the unfortunate death of his baby in 1985. Such behavior is cruel in the extreme and appalling to anyone with any degree of sensitivity. The majority concedes these remarks were made in retaliation to a remark the supervisor made about Risinger's children. However, the supervisor, Yohan Mills, was not punished for precipitating this verbal altercation. I find it extremely unfair that one party can antagonize another with impunity.
 {¶ 13} Finally, I would merely point to how long ago this poor child passed away. A parent will never get over the loss of a child, but had this child recently died, I believe the taunt would have been much more egregious.
 {¶ 14} While I find the actions of Durig and Risinger are vicious and repulsive, I do not believe they are illegal.
 DANIEL {¶ 15} Appellant Daniel alleged it was Mr. Jones who brought the camera into contact with Daniel's cheek, causing the camera to then strike Jones. Jones testified Daniels came at him shoving the camera against Jones' face. In my opinion, this does not establish contempt by clear and convincing evidence.
 {¶ 16} I would reverse the trial court's findings in part and conclude the evidence does not show, by clear and convincing evidence, appellants Gabriel, Durig, Risinger and Daniel violated the injunction.